United States District Court
Southern District of Texas
**ENTERED**
October 03, 2022
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| FLOYD N. WILLIAMS, SR., *et al.*, § § Plaintiffs, § § v. § § METROPOLITAN LIFE INSURANCE § COMPANY, § § Defendant. § | CIVIL ACTION NO. H-22-1594 |

**MEMORANDUM AND OPINION**

This case involves a life insurance policy. The insured is now over 90, but still alive. The insured and beneficiaries allege that actions taken by the insurer that diminished the death benefits and cash surrender value breached the life insurance contract, breached the duty of good faith and fair dealing, involved misrepresentations about the insurance policy terms, and were fraudulent. The plaintiffs allege a continuing fraud, an anticipatory breach, and violations of the Texas Administrative Code, Insurance Code, and the Texas Deceptive Trade Practices Act.

The insurer has moved to dismiss the amended complaint, (Docket Entry No. 7), based on limitations and failure to state a claim; the plaintiffs have responded, and the insurer replied. (Docket Entry Nos. 9, 16, 18). Based on the pleadings, the motion, response, reply, the arguments of counsel, and the applicable law, the court grants the motion to dismiss. Because the plaintiffs have already amended and because the allegations make it clear that amendment would be futile, the dismissal is with prejudice.

The reasons are set out below.

**I.      Background**

In 1979, Reverend Floyd Williams, Sr., purchased a life insurance policy from Metropolitan Life Insurance Company, naming as "revocable contingent beneficiary" his wife,

Lola Williams. (Docket Entry No. 9-1 at 16). The policy provided various methods for paying its monthly premiums. Williams could make timely payments to MetLife. If he did not, and instead defaulted on a premium payment, the policy allowed him to elect between two methods of automatic payment. Williams alleges that he chose the "Check-O-Matic" method, under which MetLife would debit the premium amount from an account that Williams designated. (Docket Entry No. 7 ¶ 10). Alternatively, under the "Automatic Premium Loan" option, the election of which required Williams's written authorization, MetLife could charge the premium amount against the policy value as a loan. (*Id.* ¶ 11).

Williams alleges that he never elected the Automatic Premium Loan option, but that MetLife nonetheless charged unpaid premiums against the policy value under that option from April 6, 1986 to August 6, 1989, when the premiums were paid in full. (*Id.* ¶ 12). Interest compounded on the Automatic Premium Loan payments, and what was a $3,271.04 obligation grew to over $32,000, substantially diminishing the policy benefits and cash surrender value. (*Id.*). Williams and the current policy beneficiaries (together, "Williams") assert claims for: (1) breach of contract; (2) breach of the duty of good faith and fair dealing; (3) misrepresentation; (4) fraud; (5) violations of the Texas Deceptive Trade Practices Act; and seeks to recover compensatory damages, mental anguish damages, treble damages, and attorney's fees and costs. (*Id.* ¶ 40). MetLife has moved to dismiss Williams's complaint because the complaint allegations show that limitations has run and, for the fraud claims, for failure to state a claim. MetLife moves to dismiss the claims of Williams's beneficiaries for lack of standing. Williams has responded. (Docket Entry Nos. 9,16,18). After the court heard from the parties regarding MetLife's motion, Williams filed a letter with the court addressed to MetLife, in which he requested "the full cash surrender value of the policy." (Docket Entry No. 22). This request was "not intended to convey a request

for settlement, but rather a demand for the full cash surrender value pursuant to the policy." (*Id.*). While the court considered the letter, it does not affect the following analysis.

**II.      The Legal Standard for Motions to Dismiss under Rule 12(b)(6)**

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted lawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556).

To withstand a Rule 12(b)(6) motion, a complaint must include "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Lincoln v. Turner*, 874 F.3d 833, 839 (5th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557). "A complaint 'does not need detailed factual allegations,' but the facts alleged 'must be enough to raise a right to relief above the speculative level.'" *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 765 (5th Cir. 2019) (quoting *Twombly*, 550 U.S. at 555). A court reviewing a motion to dismiss under Rule 12(b)(6) may consider "(1) the facts set forth in the complaint, (2) documents attached to the

3

complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Inclusive Cmtys Proj., Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019).

### III. Analysis

#### A. The Statute of Limitations

MetLife argues that the applicable statutes of limitations have long since run. (Docket Entry No. 9 at 6–10). The parties appear to agree that Texas law applies. (*See* Docket Entry No. 9 at 7 (discussing Williams's claims "[u]nder Texas law"); Docket Entry No. 16 ¶¶ 17 *et seq.* (discussing claims under Texas law)). The applicable limitations statutes and periods are set out in the chart below:

| *Claim* | *Duration* | *Citation* |
| --- | --- | --- |
| Breach of Contract | Four Years | Tex. Civ. Prac. & Rem. Code § 16.004(a) |
| Fraud | Four Years | Tex. Civ. Prac. & Rem. Code § 16.004(a) |
| Bad Faith | Two Years | *Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 221 (Tex. 2003) (citing Tex. Civ. Prac. & Rem. Code § 16.003(a)) |
| DTPA | Two Years | Tex. Bus. & Com. Code § 17.565 |
| Insurance Code | Two Years | Tex. Ins. Code § 541.162(a) |

Limitations begins to run when the cause of action accrues unless the discovery rule tolls the period. "Generally a cause of action accrues when facts come into existence [that] authorize a claimant to seek a judicial remedy, when a wrongful act causes legal injury, or whenever one person may sue another." *American Star Energy & Minerals Corp. v. Stowers*, 457 S.W. 3d 427, 430 (Tex. 2015) (internal quotation marks omitted).

#### i. Breach of Contract

Williams alleges that MetLife breached the terms of the policy by not using the Check-O-Matic option to pay premiums in default. (Docket Entry No. 7 ¶ 15). MetLife states that any cause of action for breach of contract accrued by August 6, 1989, when the Automatic Premium Loan

4

option was last exercised to pay a policy premium that Williams had not timely paid. (Docket Entry No. 9 at 8).

Williams does not directly respond to MetLife's arguments about when the breach of contract claim accrued and limitations began to run. Williams instead focuses on his argument that MetLife committed a continuing breach. Williams's breach-of-contract claim arises out of MetLife's failure to pay premiums with the Check-O-Matic option and instead using the Automatic Premium Loan option, which Williams allegedly did not authorize. The cause of action for breach of contract accrued when those payments were made, allegedly in violation of the policy. The last payment was made in August 1989. Limitations long since ran. The court dismisses Williams's claim for breach of contract as time barred.

### ii. The Continuing Tort Doctrine

Williams alleges that MetLife perpetuated a fraud by making false representations about the policy and by exercising the Automatic Premium Loan option without his authorization. (Docket Entry No. 7 ¶ 16). Williams contends that, regardless of the date on which MetLife made a fraudulent representation, limitations does not bar his fraud claim because the continuing tort doctrine applies. (Docket Entry No. 16 ¶ 12). "A continuing tort involves wrongful conduct inflicted over a period of time that is repeated until desisted, and each day creates a separate cause of action. A cause of action for a continuing tort does not accrue until the defendant's tortious act ceases." *First Gen. Realty Corp. v. Maryland Cas. Co.*, 981 S.W.2d 495, 501 (Tex. App.—Austin 1998, pet. denied). Williams argues that the doctrine applies to his fraud claim because "[w]ith each passing day, Defendant claims to be owed more and more money from Reverend Williams in order to pay off the improperly exercised Automatic Premium Loan provision." (Docket Entry. No. 7 at 8). MetLife denies that Williams's complaint states a claim for any tort, and, even if it does, it is not a continuing one. (Docket Entry No. 18 at 2).

5

In the absence of a continuing tort, the statute of limitations for Williams's fraud claim has run, whether the claims arise out of MetLife's alleged misrepresentations as to the policy in 1979 or the alleged wrongful use of the Automatic Premium Loan option between April 6, 1986 and August 6, 1989.  At the latest, the accrual date for Williams's fraud claims is August 6, 1989, meaning that the four-year limitations period for fraud claims expired 29 years ago, on August 7, 1993.

Williams appears to present two theories of continuing tort, both based on the accrual of interest on the Automatic Premium Loan payments.  The first theory is that the accumulation of interest on the allegedly fraudulently Automatic Premium Loan payments is a continuing tort. (Docket Entry No. 12 ¶ 13) ("As Defendant's tortious conduct continues on a daily basis, the wrongful conduct continues to effect additionally injury to the Plaintiffs until that conduct ceases."). Williams points to a letter from MetLife.  (Docket Entry No. 16 ¶ 13).  In that letter, dated March 23, 2021, MetLife writes, "[w]e processed your request for a cash value quote for your policy effective March 23, 2021." (Docket Entry No. 7-1[1] at 17).  The letter states the "Total Policy Cash Value," "Policy Loan Principal," and "Policy Loan Interest Due," then calculates the "Total Cash Surrender Value" of the policy by subtracting the latter two figures from the first. (*Id.*)  The second theory is that MetLife's use of the Automatic Premium Loan option violated the Texas Administrative Code because it was "classif[ied] . . . as non-forfeiture value within the Policy," which the Code prohibits.  (Docket Entry No. 16 ¶ 13).

These allegations do not support the application of the continuing tort doctrine.  The Texas courts of appeal distinguish between a continuing tort and a tort that causes continuing injury.  The

---

[1] Citations to pages in Docket Entry No. 7-1, which contains three exhibits, refer to the pagination of the PDF file itself.

doctrine can apply only in the first situation. *Rogers v. Ardella Veigel Inter Vivos Tr. No. 2*, 162 S.W.3d 281, 290 (Tex. App.—Amarillo 2005, pet. denied) ("[C]are must be taken to distinguish between 1) repeated injury proximately caused by repetitive wrongful or tortuous acts and 2) continuing injury arising from one wrongful act. While the former evinces a continuing tort, the latter does not."). In *Allen v. Wilson*, the plaintiff sought to apply the doctrine to an allegedly tortious filing of a court judgment that encumbered her property because "because the judgment, which [the plaintiff] has failed to pay, continue[d] to accrue interest." No. 06-15-00060-CV, 2016 WL 832780, at *5 (Tex. App.—Texarkana Mar. 4, 2016, pet. denied). The court concluded that:

> Even if we assume that Wilson's filing of a judgment properly obtained in Grayson County is somehow wrongful, it did not constitute a continuing tort because (1) the filing of the lien is the alleged wrongful act, which occurred once, and (2) the damage to the property was complete when the lien was filed since the judgment set forth the terms of the post-judgment interest.

*Id.* The logic of *Allen* applies here. Williams alleges that the Automatic Premium Loan payments were the tortious acts. The last of those allegedly wrongful acts occurred long ago. The continued accrual of interest is not the wrongful act, but rather the injury arising from the alleged wrongful acts. Williams has not alleged that MetLife had discretion to change the rate of interest accumulating on those payments.

Williams points to communications from MetLife to support his arguments that the continuing tort doctrine applies. (Docket Entry No. 16 ¶ 13 (citing Docket Entry No. 7 ¶ 18; Docket Entry No. 7-1 at 17)). But these communications simply state the outstanding balance of the Automatic Premium Loan amounts. The communications do not demand payment or effectuate the Automatic Premium Loan payment option. Williams does not allege that the amounts quoted were incorrect. Accurately quoting an outstanding loan balance—regardless of whether the loan's existence is subject to legal challenge—is not a basis to apply the continuing tort doctrine. *Cf. Robinson v. Mariner Health of Sw. Houston*, No. 12-cv-1456, 2013 WL

12315097, at *6 (S.D. Tex. Feb. 7, 2013) ("Engaging in wrongful conduct that causes injury and then refusing to modify, reverse, or cease that conduct for some period of time thereafter does not constitute a continuing tort.").

Williams cites *Howard v. CitiMortgage, Inc.*, but this case does not help him. *Howard* is clearly distinguishable.[2] In *Howard*, the defendant wrongfully and repeatedly billed the plaintiff for unnecessary services. No. 13-cv-V543, 2014 WL 6802550, at *7 (S.D. Miss. Dec. 2, 2014). *Howard* did not concern a tortious loan on which interest accumulated. Howard involved repeated allegedly tortious actions of the same general character occurring over a period of time that extended the limitations period. *Id.* The accrual of interest on payments last made in 1989 does not extend the long-expired limitations period for claims arising from those payments.

Williams's argument about the Texas Administrative Code does not change the analysis or outcome. Williams concedes that there is no private right of action under the Code. (Docket Entry No. 16 ¶ 27). And any violation of the Code provision would also be time barred, given that the final Automatic Premium Loan payment was made in 1989. The Code provision states:

> (a) Automatic premium loans do not constitute a stipulated form of insurance, and the automatic premium loan provision must not be classified as a nonforfeiture value. Provisions for automatic premium loans must be revocable at the option of the owner of the policy.

28 TEX. ADMIN. CODE § 3.109. Any violation of this portion of the Code occurred, at the latest, in August 1989. Whether or not the court accepts MetLife's argument that the limitations period for any violation of the Code is two years, (Docket Entry No. 9 at 9), limitations has run.

---

[2] The court assumes that the Mississippi continuing tort doctrine applied in *Howard* is the same as the Texas doctrine.

B.     **Anticipatory Breach of Contract**

"Repudiation or anticipatory breach is a positive and unconditional refusal to perform the contract in the future, expressed either before performance is due or after partial performance." *CMA-CGM (Am.), Inc. v. Empire Truck Lines*, Inc., 416 S.W.3d 495, 519 (Tex. App.—Houston [1st Dist.] 2013, pet. denied). "In Texas, in order to prevail on a claim for anticipatory breach, a plaintiff must establish each of the following elements: (1) an absolute repudiation of the obligation; (2) a lack of a just excuse for the repudiation; and (3) damage to the non-repudiating party. *Gonzalez v. Denning*, 394 F.3d 388, 394 (5th Cir. 2004) (citing *Taylor Publ'g Co. v. Sys. Mktg., Inc.*, 686 S.W.2d 213, 217 (Tex. App.—Dallas 1984, writ ref'd n.r.e.)). Neither party cites authority as to whether an anticipatory breach action can be maintained when an insured alleges that the insurer has repudiated its obligations under a life insurance policy even if the insured still lives, and when no claim for benefits has been made, because the insurer has stated that when the day comes, it will pay the death benefits in the amount diminished by the Automatic Premium Loan payments and interest.

In his complaint, Williams alleges that "Defendant's conduct suggests that it is not intending to pay the death benefits to the beneficiaries at death as contemplated or agreed to between the parties." (Docket Entry No. 7 ¶ 20). Williams refers to communications that "manifest[] an intent to abandon the terms the terms of the Policy" by stating that the death benefit will be lower than it would have been if Williams had made the premium payments timely and if MetLife had not used the Automatic Premium Loan option when Williams defaulted on a payment. (*Id.* ¶ 21). Williams also states that his claim for anticipatory breach "is not hinged to a proper term within the Policy." (Docket Entry No. 16 ¶ 18). "Rather, [MetLife] is withholding the full cash surrender value based on its improper election of the [Automatic Premium Loan] option." (*Id.*). Williams contends that "the repeated communications provided by MetLife to Plaintiffs

9

demonstrate [its] intent in writing to not pay the full death benefit upon Reverend Williams['s] death." (*Id.*).

MetLife contends that Williams has failed to allege a claim for anticipatory breach of the insurance contract. (Docket Entry No. 9 at 12). MetLife argues that its communications to Williams simply quoted the policy value and do not indicate that MetLife has repudiated or intends to repudiate its policy obligations. (*Id.*). MetLife argues that Williams's allegations about the diminished policy value do not state a claim for anticipatory breach. According to MetLife, the complaint allegations are that "the cash surrender value of the Policy began diminishing when the [Automatic Premium Loan] payments first began and Mr. Williams did not pay back the loan." (Docket Entry No. 18 at 6). MetLife argues that "[t]hese are allegations for a breach of contract claim—not a claim for an anticipatory breach." (*Id.*).

The court agrees with MetLife that Williams has not stated a claim for anticipatory breach. Rather, Williams has alleged breaches of the insurance contract based on the Automatic Premium Loan payments. MetLife has not repudiated the agreement; the dispute is whether Williams ever selected the Automatic Premium Loan option in the first place as the way MetLife could pay the policy premiums that Williams had not paid timely. Williams does not contend that MetLife will not pay benefits when the beneficiaries make a claim after Williams passes. Williams's argument is that MetLife breached the insurance contract when it used the Automatic Premium Loan option. The diminished value of the policy and benefits that resulted is not an anticipatory breach, but the downstream consequence of the alleged past breaches.

C. **The Availability of Declaratory Judgment**

MetLife argues that Lola Williams, Cuney Williams, and Floyd Williams, Jr., the polices' current beneficiaries, lack standing to sue on Williams's policy. (Docket Entry No. 9 at 13–14). While the parties agree that a beneficiary of a life-insurance policy has no standing to recover

under the policy if his or her interest has not vested, (*Id.* at 13; Docket Entry No. 16 ¶ 20), Williams argues that "the beneficiaries in this proceeding are not suing to recover under the policy[;] rather[,] they are suing for a declaration of their contractual rights under the policy." (Docket Entry No. 16 ¶ 20).

In reply, MetLife notes that the complaint does not assert or mention a declaratory judgment claim. While William and the beneficiaries did not explicitly invoke 28 U.S.C. § 2201(a), and did not ask for a declaration in their prayer for relief, (Docket Entry No. 7 ¶ 40), they did "seek a declaration of the parties' rights under the Policy, including declaratory judgment that Defendant's conduct constitutes anticipatory breach of the Policy and that Defendant had no authority to exercise the APL option[.]" (*Id.* at ¶ 21).

A declaratory judgment is a procedural device to settle a case or controversy involving a substantive right. *Hurd v. BAC Home Loans Servicing*, LP, 880 F. Supp. 2d 747, 769 (N.D. Tex. 2012) ("The availability of a declaratory judgment depends upon the existence of a judicially remediable right[.]"); *Bell v. Bank of America Home Loan Servicing LP*, No. 4:11-CV-2085, 2012 WL 568755, at *8 (S.D. Tex. Feb. 21, 2012) ("The Declaratory Judgment Act is a procedural device that creates no substantive rights; rather, it requires the existence of a justiciable controversy."). Here, the substantive rights are based in the policy contract. Because the breach of contract claims have been dismissed, the declaratory judgment claim must also be dismissed. *Stallings v. CitiMortgage, Inc.*, 611 Fed. Appx. 215, 218 (5th Cir. 2015) ("When the other claims have been dismissed, it is appropriate also to dismiss any declaratory-judgment request.").

Additionally, MetLife is correct that, whether the contract claims remain viable or not, the beneficiary plaintiffs lack standing because they are not third-party beneficiaries of the policy. The parties agree that to be a third-party beneficiary, a party must show that "(1) [the beneficiaries

were] not privy to the written agreement; (2) the contract was actually made for [their] benefit; and (3) the contracting parties intended for [them] to benefit by their agreement." *Talman Home Fed. Sav. & Loan Ass'n of Illinois v. Am. Bankers Ins.*, 924 F.2d 1347, 1350 (5th Cir. 1991).

> [S]ettled Texas law holds that a named beneficiary has no vested interest in the policy proceeds unless one of the following conditions occurs: (1) a contract—separate from the policy itself—proscribes any change in the designation of the beneficiary; (2) the policy itself does not authorize the owner of the policy to change the beneficiary; or (3) the insured dies.

*Rotating Services Indus., Inc. v. Harris*, 245 S.W.3d 476, 481 (Tex. App.—Houston [1st Dist.] 2007, pet. denied).

The plaintiffs have not argued that there is a contract from the policy that prohibits a change to the policy beneficiaries. There is no dispute that the policy authorizes changes to its beneficiaries. It is also undisputed that Williams, Sr., added beneficiaries after obtaining the policy from MetLife. Williams, Sr., is still alive. The other plaintiffs are not third-party beneficiaries and cannot sue under the policy for a declaration of rights or other remedy.

The plaintiffs cite *Old Orchard*, but it does not help them. In *Old Orchard,* a clause in the contract provided that "[t]he Owner and Contractor waive all rights against each other and the Subcontractors . . . each of the other[.]" *Temple EasTex, Inc. v. Old Orchard Creek Partners, Ltd.*, 848 S.W.2d 724, 730 (Tex. App.—Dallas 1992, writ denied). A subcontractor asserted this contractual waiver provision. The court held that the subcontractor was a third-party beneficiary entitled to enforce the waiver. (*Id.*). Here, the beneficiaries' rights under Texas law have not vested because the beneficiaries may change before Williams's death. Furthermore, only one of the currently named beneficiaries, Lola Williams, was named at the time of contracting. Although Williams may have contemplated adding beneficiaries as his family grew, that does not mean that they have vested rights in the contract.

**D.    Fraud**

Williams alleges that MetLife fraudulently represented the policy terms, in violation of Texas common law, the Texas Insurance Code, and the Texas Deceptive Trade Practices Act. MetLife argues that, even if these claims are not time barred—which they are—they should be dismissed because Williams's complaint does not meet the pleading requirements of Federal Rule of Civil Procedure 9(b).

Rule 9(b) requires complainants asserting fraud to plead facts with sufficient particularity to "provide defendants adequate notice of the nature and grounds of the claim." *Floyd v. CIBC World Mkts., Inc.*, 426 B.R. 622, 652 (S.D. Tex. 2009) (citing *Hart v. Bayer Corp.*, 199 F.3d 239, 247 n.6 (5th Cir. 2000)); *Frith v. Guardian Life Ins. Co. of Am.*, 9 F. Supp. 2d 734, 742 (S.D. Tex. 1998). Pleadings must "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Southland Securities Corp. v. INSpire Ins. Solutions, Inc.,* 365 F.3d 353, 362 (5th Cir.2004) (quoting *Williams v. WMX Technologies, Inc.,* 112 F.3d 175, 177–78 (5th Cir.1997)). "Put simply, Rule 9(b) requires the 'who, what, when, where, and how' to be laid out." *Benchmark Elecs., Inc. v. J.M. Huber Corp*., 343 F.3d 719, 724 (5th Cir.)*, opinion modified on denial of reh'g*, 355 F.3d 356 (5th Cir. 2003) (quoting *Williams v. WMX Techs.*, Inc., 112 F.3d 175, 179 (5th Cir. 1997)). Rule 9(b) also applies to Williams's allegations that MetLife violated §§ 541.051 and 541.061 of the Code, because he alleges that those violations result from MetLife's misrepresentations of the policy terms on which Williams relied. The same is true as to Williams's allegations that MetLife violated the DTPA. *See Khan v. Allstate Fire & Cas. Ins. Co*., No. 11-cv-2693, 2012 WL 1601302, at *7 (S.D. Tex. May 7, 2012) ("[A]llegations involve[ing] misrepresentations and are substantively claims of fraud" and therefore subject to Rule 9(b).).

Williams alleges that:

> Plaintiffs were misled about how the APL provision could be exercised and the effect it would have on the value of the Policy. Reverend Williams was also misled about the Check-O-Matic provision which he elected specifically to avoid the non-payment of any premium due on the Policy. Defendant also failed to disclose that the APL option, even if not elected at the home office in accordance with the policy, would be exercised and would take precedence over the Check-O-Matic option. Defendant further misled Plaintiffs as to the rights and benefits that the policy would ultimately confer by exercising a provision that effectively hedges the Defendant's obligations by turning the policy against the Plaintiffs.

(Docket Entry No. 7 ¶ 16; *see also id.* ¶¶ 26, 28, 33 (similar allegations)).

These allegations lack the detail Rule 9(b) requires to state a claim for fraud (or the related claims). Williams does not allege how MetLife made the alleged misrepresentations, or who at MetLife made these representations. Limitations aside, Rule 9(b) requires more.

### E.  The Texas Insurance Code § 1103.102 Claim

Williams alleges that MetLife violated Texas Insurance Code § 1103.102, which requires a life insurance company to pay the policy proceeds to the insured's designated beneficiaries on the death of the insured. Williams alleges that "Defendant has manifested their intent not to comply with this provision through written correspondence sent to Reverend Williams." (Docket Entry No. 7 ¶ 29). MetLife did not indicate that it would not pay policy benefits to Williams's designated beneficiaries; rather, it has stated its intent to pay the amount due under the policy, which is the amount remaining after the Automatic Premium Loan payments and the interest on those payments. And, assuming that a private right of action exists under chapter 1103, this claim must also be dismissed because it is also barred by limitations.

### F.  The Breach of the Duty of Good Faith and Fair Dealing Claim

Williams argues that MetLife has breached its duty of good faith and fair dealing, (Docket Entry No. 7 ¶ 16), for the same reasons he alleges fraud and breach of contract. But MetLife is correct that, while an insurer has a duty of good faith and fair dealing towards its insured, that duty is not implicated here, because "[a] cause of action for breach of the duty of good faith and fair

14

dealing is stated when it is alleged that there is no reasonable basis for denial of a claim or delay in payment or a failure on the part of the insurer to determine whether there is any reasonable basis for the denial or delay." *Arnold v. Nat'l Cnty. Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex. 1987), *holding modified*, *Murray v. San Jacinto Agency*, Inc., 800 S.W.2d 826 (Tex. 1990). Williams has not alleged facts that could plausibly show that MetLife intends to withhold paying policy benefits when they become due. The letter he sent to MetLife requesting the full cash surrender value of the policy according to the policy terms, (Docket Entry No. 22), does not change the fact that any violation of those terms occurred in 1989. The analysis here does not depend on MetLife's response to that letter. Williams has not stated a claim with respect to the breach of duty of good faith and fair dealing.

### IV.    Conclusion

The court grants the motion to dismiss. (Docket Entry No. 9). Because amendment would be futile, the dismissal is with prejudice and without leave to amend. Final judgment is entered by separate order.

SIGNED on October 3, 2022, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge